STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-0808

DAVID AND ROSALYN RICHARD

VERSUS

GARY MATTE BUILDERS, INC.

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2005-2766,
HONORABLE RICK BRYANT, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

AFFIRMED AS AMENDED.

Timothy O'Dowd
Attorney at Law
921 Ryan Street, Suite D
Lake Charles, LA 70601
(337) 310-2304
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    David & Rosalyn Richard

Sharon Kyle
4960 Bluebonnet Blvd., Suite A
Baton Rouge, LA 70809
(225) 293-8400
COUNSEL FOR DEFENDANTS/APPELLEES:
    Gary Matte Builders, Inc.

PETERS, J.

This litigation arises from a residential construction contract. The plaintiffs, David and Rosalyn Richard, brought suit against Gary Matte Builders, Inc., the construction company which had contracted to build them a residence on their property, seeking to recover damages for breach of the contract and for violation of the Louisiana Unfair Trade Practices Act. Gary Matte Builders, Inc. answered the petition and reconvened against the Richards, seeking an award for the work performed under the contract. After trial, the trial court rendered judgment dissolving the contract and awarded David $1,500.00 and Rosalyn $3,000.00 in general damages. The trial court also awarded Gary Matte Builders, Inc. judgment against the Richards for $9,573.00. This award represented recovery for work performed under the contract less cost of repair of the defects. The trial court further rejected the Richards' claim under the Louisiana Unfair Trade Practices Act. The Richards have appealed, asserting that the trial court erred in awarding Gary Matte Builders, Inc. anything for work performed under the contract and in not awarding them additional damages.

## DISCUSSION OF THE RECORD

Gary Matte Builders, Inc. (sometimes hereinafter referred to as the "contractor") is a construction corporation the principal officers of which are Gary Lee Matte and Laura Matte, husband and wife.[1] In the contract at issue in this litigation, Gary Matte Builders, Inc. agreed to construct a residence on property in Calcasieu Parish owned by the Richards for the sum of $80,960.00. Construction began in April of 2005, and the concrete footings for the foundation were poured on April 5, 2005. Two days later, the construction crew poured the concrete slab over

---

[1]Laura Matte is the president of the corporation, and Gary Lee Matte is the secretary. Gary Lee Matte also serves as the construction supervisor on jobs performed by the corporation.

the footings. Before the footings and slab were poured, J & J Exterminating Company, Inc. (J & J) performed a termite pretreatment of the soil foundation.

Soon after pouring the slab, the construction crew discovered that they had framed up the slab six inches out of square. In order to correct this error, Mr. Matte ordered that thin pie-shaped concrete slabs be poured the length of the slab on either side to square it up. These additions extended fifty-six feet along each side of the slab and were approximately eight inches wide at the larger end and two inches wide at the smaller end. No one contacted J & J to pretreat the soil foundation under these additions before they were poured. Furthermore, the additions were not anchored to the original slab, and this resulted in an open crack between the original slab and the additions extending the full fifty-six feet along both sides of the slab.

Not only did Gary Matte Builders, Inc. not contact a representative of J & J before pouring the additions, but it also did not inform the Richards of this error or of the proposed correction. In fact, the Richards first became aware of the error on April 19, 2005, when Mrs. Richard observed the construction crew framing up the slab to pour the additions. That same day, the construction crew poured the pie-shaped additions to each end of the slab.

The next day, the Richards met with Mr. Matte and questioned him about this new pour. Mr. Matte explained the initial error and the necessity of the additions to the slab. When questioned about the effect of the additional pours on the structural stability of the slab, Mr. Matte informed the Richards that, because the additions would now carry the weight of the exterior walls of the residence, they had been poured to the depth of the original footings. Mrs. Richard then placed her hand under one of the additions to show Mr. Matte that his assertion concerning the depth of the

2

concrete was not correct. In fact, the additions had been poured to the depth of twelve inches instead of the twenty-four-inch depth of the original footings. Mr. Matte acknowledged this second error and agreed that the additions were inadequate to carry the weight of the exterior walls. However, he then suggested that the footings could be poured beneath the additions without having to remove the additions and start anew.

The Richards were not satisfied with the explanation of Mr. Matte or of the contractor's performance under the contract, and construction ceased on the residence on that day. Immediately thereafter, the Richards retained counsel to represent their interests and the services of Dr. Janardanan O. Uppot, a Lake Charles, Louisiana civil and geotechnical engineer, to survey the situation and give them some guidance.[2]

Dr. Uppot examined the construction site on April 24, 2005, and on the next day issued a report to the Richards concerning his findings and recommendations. In his report, Dr. Uppot opined that both the original concrete pour and the additions were not completed in a workmanlike manner—the original pour because it was not square and the additions because, as load bearing walls, footings were required. He suggested in his report that the additions be removed and replaced with additions poured to a significant depth to sustain the loads that would be placed on them by the outside walls. Additionally, he suggested that the additions be anchored to the existing slab by two lines of dowel bars extending the length of the slab and that the surface between the existing slab and the additions be sealed by a bonding agent such as "Therobond."[3]

_____

[2]Mr. Richard testified that he did not retain Dr. Uppot to do anything more than determine whether the existing work was performed in a workmanlike manner.

[3]"Therobond" is referred to in the testimony of other witnesses as "Thermabond."

3

Because it had not pretreated the soil under the additions, J & J initially refused to unconditionally guarantee the termite treatment. By a letter dated May 4, 2005, J & J notified the Richards that, unless they signed a waiver which would preclude its liability for termites entering the home through the cracks created by the additions, it would cancel the subterranean termite protection contract on the premises. However, sometime thereafter, J & J forwarded to the Richards a letter which stated that someone with Gary Matte Builders, Inc. had contacted its office to inquire as to what it could do in regard to a termite protection guarantee if the additions were removed and repoured after treatment by J & J. The letter stated that "[t]his would allow us to treat the soil before the slab addition is poured. After discussing the matter with my General Manager he said that we could treat it and warrant it using a perimeter product of choice. This is in an effort to try and meet the needs of both the contractor and home owner."

Gary Matte Builders, Inc. also retained an expert, Dr. George Monroe Hammitt, to evaluate the slab and to make recommendations concerning remedying the defects. Dr. Hammitt, who is a civil engineer and professor in the Construction Management Department of Louisiana State University in Baton Rouge, Louisiana, examined the initial slab and found it to be in compliance with all appropriate codes and standards. However, he agreed with Dr. Uppot's finding that the additions were not completed in a workmanlike manner and should be removed completely rather than patched. Additionally, he agreed that Dr. Uppot's recommended remedy was the appropriate way to remedy the defect and preserve the square footage as contemplated in the original construction plans.[4] With regard to the existence of cracks running the length

_____

[4]He suggested in his testimony that the only other solution would be to cut the slab in such a manner as to square it up. However, this solution would result in the loss of fourteen square feet

of the slab, Dr. Hammitt asserted that the "Thermabond" would not only make the connection significantly stronger than the existing slab, but it would also seal the crack completely.

On May 26, 2005, the Richards filed the instant suit. Fifteen days later, Gary Matte Builders, Inc. offered the following options to the Richards in an effort to resolve the litigation:[5]

> 1. Remedy the slab subject to the approval and certification of the completed slab by an engineer, provide proper termite treatment, and complete construction of the residence; or

> 2. Deduct the costs for repair to the slab, $1,000.00, from the $11,573 payment of the draw currently owed and cancel the contract; or

> 3. Deduct the price per sq. ft. $55.60 for the square footage loss to your clients from the contract price ($55.60 x 14 = 4778.40 deduction) and complete the residence; or

> 4. Deduct the price per sq. ft. $55.60 for the square footage loss to your clients from the payment of the draw currently owed ($55.60 x 14 = 4778.40 deduction) and cancel the contract.

The Richards rejected the offer.

After a two-day trial, beginning on January 12, 2006, the trial court rendered judgment as previously described. The Richards then perfected this appeal. In their sole specification of error, the Richards expressed their complaints on appeal as follows:

> The court nullified the building contract. However, and although hotly disputed, the court determined that with another patch effort, the slab would be usable at some future point. Based thereon the trial court granted Matte's request for payment under the contract. The trial court required the Richards to pay for a patchwork slab, a slab they did not contract for and do not want.

_____

in the residence itself.

[5]The attorney for Gary Matte Builders, Inc. made this offer in a letter addressed to counsel for the Richards.

Because the Richards did not contract for nor do they want a patchwork slab, the court erred in forcing them to pay for it.

1. Matte had not substantially completed his obligation under the contract, to build a house. Therefore, when the court nullified the contract, it erred in granting Matte payment under the nullified contract.

2. Additionally, since Matte failed to present any evidence, much less meet its burden of proof, that the Richards were enriched by receipt of the patchwork slab, one they do not want, this court would commit error in granting Matte anything for unjust enrichment.

3. Finally, the court erred in not making the Richards whole after dissolution of the contract.

## OPINION

Louisiana Civil Code Article 1906 provides that "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." Additionally, "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation." La.Civ.Code art. 1994. Furthermore, "[a] failure to perform results from nonperformance, *defective performance*, or delay in performance." *Id.* (emphasis added). The record clearly establishes that the manner in which the contractor poured the original slab as well as the pie-shaped additions constituted defective performance under the contract.

In addition to the right to recover damages, "the obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved" when an obligor fails to perform under a contract. La.Civ.Code art. 2013.[6] The general remedies available to the party who has obtained dissolution of a contract are described in La.Civ.Code art. 2018, which provides:

> Upon dissolution of a contract, the parties shall be restored to the situation that existed before the contract was made. If restoration in kind is impossible or impracticable, the court may award damages.

---

[6]Louisiana Civil Code Article 2013 also provides that, "[i]n an action involving judicial dissolution, the obligor who failed to perform may be granted, according to the circumstances, an additional time to perform." However, that situation is not now before us.

6

> If partial performance has been rendered and that performance is of value to the party seeking to dissolve the contract, the dissolution does not preclude recovery for that performance, whether in contract or quasi-contract.

However, the measure of damages in a construction contract is "the losses that may ensue from his non-compliance with his contract." La.Civ.Code art. 2769.

There is no dispute that Gary Matte Builders, Inc. is liable for the damages caused the Richards by its failure to perform under the construction contract. Furthermore, in awarding judgment to Gary Matte Builders, Inc. for its partial performance, the trial court obviously concluded that, although defective, this partial performance was of some value to the Richards.

The Richards presented no evidence of the cost of removing the slab to restore them "to the situation that existed before the contract was made." La.Civ.Code art. 2018. Instead, they complain that they should not have to pay for a "patchwork slab." In rejecting this argument, we first note that all of the evidence presented, including that of the Richards' own expert, established that the original error in pouring the slab out of square could be corrected by tearing out the additions, pretreating the soil for termites, properly pouring new pie-shaped additions, and sealing the cracks between the original slab and the additions with Thermabond. The record contains no evidence that the slab, when corrected using Dr. Uppot's recommendations, would be anything less than structurally satisfactory for the Richards' residence. In fact, the use of the dowels and Thermabond would create a bond between the original slab and the additions that would actually be stronger than the bond within the slab itself. This sealed connection would also alleviate any problem with termites entering the dwelling through the space between the addition and the slab. The only evidence to the contrary is Mrs. Richard's concerns that the advice she and her husband received

from their own expert would not stand the test of time.[7]  Thus, given the record as a whole, we cannot conclude that the trial court erred in awarding Gary Matte Builders, Inc. a sum for partial performance as provided in La.Civ.Code art. 2018.  We now turn to an evaluation of the award itself.

Mrs. Matte testified that the amount owed by the Richards when the dispute arose totaled $11,572.00.[8]  The trial court used this amount in making its award and reached its final award of $9,573.00 by reducing that amount by $2,000.00,[9] or the cost to repair the defect in the slab.[10]  We find that the trial court erred in its calculations and reduce that award to the sum of $4,625.32.

We reduce this award because Mrs. Matte testified that neither the statement for termite treatment nor the statement for the supplied concrete had been paid.  In fact, the concrete supplier had perfected a materialman's lien against the Richards' property in the amount of $4,229.76.  When asked to explain the difference between the principal amount of the lien and the charges according to her records, Mrs. Matte concluded that the lien amount did not include the standard discount provided to her company.  Additionally, in a number of the expense categories, Mrs. Matte could not separate that which was charged for the original slab and the cost associated with the

---

[7]The Richards presented the testimony of two building contractors who were accepted by the trial court as experts in that field.  However, their testimony related primarily to the contractor's initial defective performance, and not to an acceptable remedy.

[8]Mrs. Matte indicted this total included expenditures for labor ($2,509.00), sand ($600.00), forming materials ($1,062.00), termite treatment ($204.00), concrete ($3,671.64), plumbing ($2,974.00), and the contractor's profit ($551.00).  These figures actually total $11,571.64, and not $11,573.00.

[9]This one dollar difference is unexplained.

[10]Dr. Hammitt and Mr. Matte both estimated the cost of effecting Dr. Uppot's remedy to be between $1,000.00 and $1,500.00.  However, the trial court increased this amount by $500.00 to take into account the negative effects Hurricane Rita had on the cost of construction in the Calcasieu Parish area.

subsequent defective additions which must be torn out completely. In deriving the appropriate award, we have reduced the amount awarded ($9,573.00) by the amount of the unpaid termite treatment statement ($204.00) and by the amount of the materialman's lien filed against the property for concrete ($4,229.76) for a subtotal of $5,139.24. We further reduce that amount by ten percent of that total ($513.92) to account for the charges associated with the defective additions. Subject to this amendment in the amount awarded, we affirm the trial court's award to Gary Matte Builders, Inc. for partial performance under La.Civ.Code art. 2018.

We next turn to the Richards' complaint that the trial court did not make them "whole" after dissolution of the contract. In brief, the Richards address this issue simply by stating that they should be awarded certain expenses and lost investments which arose because of the contractor's defective performance and which are evidenced by certain exhibits in the record. They refer to these exhibits in globo and make no reference to any statutory or jurisprudential authority for their recovery. Gary Matte Builders, Inc. does not even address this issue in brief.

Louisiana Civil Code Article 1995 provides that "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived." Additionally, "[a]n obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made." La.Civ.Code art. 1996. Nonpecuniary losses are recoverable "when the contract, because of its nature, is intended to gratify a nonpecuniary interest" and "the obligor knew, or should have known, that his failure to perform would cause that kind of loss." La.Civ.Code art. 1998.

9

The Richards make no assertion that the contractor was in bad faith, and Gary Matte Builders, Inc. makes no complaint regarding the nonpecuniary awards. Therefore, La.Civ.Code arts. 1995 and 1996 apply to the degree of recovery in this matter with nonpecuniary awards not being at issue.

The exhibits referred to in the Richards' brief relate to a number of items which either have been addressed by the award to Gary Matte Builders, Inc.,[11] or are expenses that will not reoccur when building resumes,[12] or are expenses which were not necessarily foreseeable to a good faith obligor.[13] We find no error in the trial court's failure to award these expenses as damages.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court awarding Gary Matte Builders, Inc. recovery for partial performance under the contract, but amend the amount awarded by reducing it to $4,625.32. We affirm the trial court's judgment in all other respects. We assess all costs of this appeal equally between Gary Matte Builders, Inc. and David and Rosalyn Richard.

**AFFIRMED AS AMENDED.**

---

[11]These include the costs of various construction supplies and activities, including concrete, gravel, and pouring activities.

[12]These include the costs of preparation of housing plans and a survey, as well as insurance costs.

[13]These include expenses related to interim and long-term financing.